**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| VICTOR STANLEY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Miscellaneous No. |
| | ) | |
| v. | ) | |
| | ) | |
| CREATIVE PIPE, INC., et al, | ) | |
| | ) | |
| Defendants. | ) | |


## MOTION TO COMPEL JEANETTE PAPPAS TO COMPLY WITH SUBPOENA

Movant Victor Stanley, Inc. ("VSI"), pursuant to Fed. R. Civ. Proc. 45(d)(2)(B)(i), moves this Court for an order compelling Jeanette Pappas ("Mrs. Pappas") to produce the documents requested of her in the "third-party" subpoena ("Subpoena") served on her in connection with a pending proceeding in the District Court for Maryland against her husband and his company, Creative Pipe, Inc. ("CPI') in which they have been found in contempt of court for a second time. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, D. Md. Civ. No. MJG-06-2662. Her objections should be overruled and she should be ordered to produce the financial records sought in the subpoena because they are directly relevant to issues in the pending proceeding, and it would not be burdensome for Mrs. Pappas to produce them.

The Subpoena at issue[1] stems from VSI's eleven-year quest to recover damages from the blatant theft of its intellectual property by Defendants Mark Pappas ("Pappas") and CPI, parties who have repeatedly violated court orders and who are currently subject to continuing contempt proceedings in the District Court for Maryland. The Subpoena was served on Mrs. Pappas

---

[1] The Subpoena is attached as Exhibit A; Mrs. Pappas' Objections and Responses to Victor Stanley Inc.'s Subpoena is attached as Exhibit B.

because she has been the recipient of multiple transfers of valuable assets from her husband following the entry of a $3,203,265.82 judgment ("Judgment") entered against her husband and CPI.  In addition, after entry of that Judgment, Mark Pappas "rearranged" CPI in the name of "SCH Enterprises, LLC," an entity that continued the business of CPI but was "owned" on paper by Mrs. Pappas.

The Subpoena to Mrs. Pappas seeks (a) banking and financial records relating to her receipt of funds and assets from her husband after the entry of the Judgment against him,  (b) various financial records of that newly formed SCH relating to how it was created, (c)  records pertaining to how the assets of CPI were transferred to SCH, (d) corporate records relating to how SCH has operated as a successor to or "mere continuance" of  CPI, (e) business records of SCH and Mrs. Pappas relating to how SCH is actually controlled by Mark Pappas, (f) financial records of SCH and Mrs. Pappas as to how they are being used to shelter Mark Pappas' income and assets from collection or payment towards the Sanctions Award that has been entered against him, and (g) records relating to which  assets that have been transferred to Mrs. Pappas should be ordered assigned to VSI as part of the District Court's consideration of how Mark Pappas can purge himself of contempt.

## BACKGROUND

The underlying copyright/patent infringement case was filed in 2006 in the District Court of Maryland by VSI against CPI and its sole owner Mark Pappas.[2]  The case involves two findings of contempt of court against Mark Pappas and CPI, including a landmark spoliation

---

[2] As of the filing of this Motion, there are 759 docket entries in the underlying case, *Victor Stanley, Inc. v. Creative Pipe, Inc.*, D. Md. Civ. No. MJG-06-2662, Exhibit C.   Hereinafter citations to entries in that docket will be abbreviated as "Md. Docket No. _".

decision in which Mark Pappas and CPI were found in contempt of court for their massive and willful destruction of key evidence. *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497 (D.Md.2010). On February 24, 2011, the Court concluded a 6 day bench trial on VSI's intellectual property and unfair competition claims and the defenses at issue. On September 30, 2011, the Court issued its Memorandum of Decision which awarded VSI damages totaling $2,454,931.80. Md. Docket No. 480. Following Defendants' unsuccessful appeal, the Court entered an Amended Judgment against Mark Pappas and CPI on December 30, 2013 in the amount of $3,203,265.82 to include an award of attorney's fees and interest in the final judgment amount. Md. Docket Nos 665-666.

Neither Defendant made any voluntary payment on the Judgment, and VSI has been engaged in a four-year battle with the Defendants over post-judgment discovery disputes. The District Court in Maryland has entered multiple orders which Pappas and CPI have ignored.

## I.      The Current Contempt Finding and Proceeding

The most recent finding of contempt against Mark Pappas and CPI stems from a pervasive pattern of Mark Pappas and CPI violating court orders relating to discovery of Defendants' assets and their efforts to fraudulently transfer assets to related entities and family members.[3]     On April 20, 2016, the Court found that VSI had been injured as a result of these recurrent discovery violations by the Defendants. Md. Docket No. 721, at pp 11-21. Exhibit D. In accordance with Federal Rule of Civil Procedure 37(b)(2)(A), Magistrate Judge Timothy Sullivan ordered that Pappas and CPI  pay to VSI the sum of $1,281,315.91 as a sanction. Md.

---

[3] The Court summarized this history as follows: "The Defendants have been noncompliant with several Orders of the Court, including Orders directing the appearance in this Court of Defendant Mark Pappas, Orders directing the making of certain payments, and others." Order Re: Contempt Proceedings, Md. Docket  No. 556, at p. 1.

Docket No. 722. The Court found that said sum would partially compensate VSI for the losses it sustained as a result of Defendants' continuing disobedience of court orders and should also deter Defendants from continuing to violate court orders in the future. Md. Docket No. 721, at p. 27.

Mark Pappas and CPI, as before, paid nothing towards that Sanctions Award of April 20, 2016. Mark Pappas claimed he was going to appeal the Sanctions Award, but he did not. *See* Memorandum and Order Re: Sanctions/Contempt, Md. Docket No. 747, at p. 6. Exhibit E. No payment was made despite the fact that VSI has established through testimony and documents that Pappas had substantial assets at his disposal and was receiving hundreds of thousands of dollars in "commission" and other benefits from SCH, an entity Pappas created in his wife's name to carry on the business of CPI after transferring all of CPI's assets to that newly formed entity. As a result of that non-payment of any amount, on July 11, 2016, Magistrate Judge Sullivan issued a Certification of Civil Contempt, finding that civil contempt proceedings are warranted for Defendants' failure to comply with the Court's orders of February 8, 2012, November 20, 2014, and April 20, 2016. Md. Docket No. 733, at 3. A Show Cause hearing was held before the District Court on January 17, 2017, at which Mark Pappas appeared and testified. Defendant CPI did not appear and Mark Pappas' counsel represented that CPI now no longer exists. Md. Docket No. 747, Exhibit E, at 7. District Judge Marvin J. Garbis found that Pappas had failed to demonstrate a financial inability to pay the Sanctions Award and that VSI had proven by "clear and convincing evidence" that he had failed to comply with the Sanctions Award. *Id.* at 16-17. As an interim measure, the Court ordered Pappas, *inter alia*, to execute various documents to transfer his ownership to VSI in certain properties in Belize and in Salem, Oregon. *Id.* at 17.

In a follow-up hearing on October 2, 2017, before Garbis, VSI established that the net impact of those interim transfers will still leave an estimated $800,000 shortfall in what Mark Pappas and CPI are in contempt of court for failure to pay.  In light of that, VSI moved that the Court order Mark Pappas to purge himself of contempt  by making additional payments from his considerable income, liquidation of other assets, and recovery of the various fraudulent transfers he made to his wife, including SCH.  Md. Docket No. 748 at pp.1–2 (outlining other available sources of funds for payment of the shortfall).   VSI argued that it was within the power of the District Court's contempt powers to force these actions by Mark Pappas. Md. Docket No. 751.

On October 2, 2017, Judge Garbis entered a Procedural Order in the ongoing contempt proceeding, granting VSI's request that the Court consider such other methods to  have Pappas purge himself of the contempt finding and to compel compliance with the Sanctions Award.  Md. Docket No.  758, Exhibit F.  The District Court then directed the Magistrate Judge to:

> conduct any necessary proceedings and provide a Report and Recommendation regarding the request by Plaintiff for the Court to order Pappas to address his payment shortfall by taking specific actions, <u>including</u> making payments from his income, liquidation of assets, and <u>recovery of the various transfers he made to his wife.</u>

*Id.* at p. 2 (emphasis supplied).

A status hearing was held on November 2, 2017, before Magistrate Judge Sullivan and VSI's counsel laid out the current procedural posture of the case, including the existence of outstanding discovery disputes as to VSI's discovery requests to Pappas, Mrs. Jeanette Pappas, and SCH.

## II.    The Discovery Relating to the Pending Contempt Proceeding

The scope of the upcoming contempt hearing includes whether Mark Pappas has transferred various assets to his wife which can or should be used to pay the Sanctions Award

and whether SCH and other Mark Pappas-created entities are actually assets of Mark Pappas which also can be used to pay the Sanctions Award.[4]  In preparation for the continued hearing on what additional sanctions should be imposed on Mark Pappas, VSI (a) served Rule 33 and 34 discovery requests on Mark Pappas, (b) served a subpoena on SCH (for return in Nevada where it is incorporated), (c) served a subpoena on Mark Pappas' wife, Jeannette Pappas (for return in Houston, Texas where she resides), and (d) served subpoenas on Wells Fargo Bank, N.A. and Bank of America, N.A. for certain SCH banking records.

Mrs. Pappas filed timely Objections to the Subpoena.  Exhibit B.  A meet and confer was held on November 1, 2017, but the parties' counsel were unable to resolve the disputes.  Exhibit G (Certification of Good Faith).

### III.    The Nexus Between the Defendants and SCH/Mrs. Pappas

There is substantial evidence that Mark Pappas created SCH in the name of his wife after he lost his appeal in order to avoid collection on the Judgment.   In every respect SCH is the successor corporation to CPI and a continuation of its business.  After entry of the final judgment and the failure of his appeal, Mark Pappas just "shut down" CPI and started carrying on the same business as CPI under a newly formed "SCH Enterprises, LLC."    As to the genesis of SCH, Judge Garbis found that:

> Defendants have "rearranged" CPI's business operations so as to render it not practically feasible for VSI to proceed with collection objectives.

Md. Docket No. 747, Exhibit E, at p. 10. Judge Garbis further noted that:

---

[4]*See, e.g., S.E.C. v. Bilzerian*, 112 F.Supp.2d 12, 26-28 (D.D.C. 2000) (a district court, as part of contempt powers, may order coercive  incarceration of a party who purposefully disposes of assets to family members in order to create the impression that the party has the inability to pay a court-ordered monetary sanction).

> CPI provided [SCH's] significant ongoing business assets, including the residual benefits of continuity flowing from past sales, to Pappas' wife without documentation or compensation. This was done by having Pappas' wife form a corporation with the name "SCH" that proceeded to function essentially as did CPI with regard to CPI's body of former customers.

*Id.* at p. 11.   Based upon the evidence, Magistrate Judge Sullivan made similar findings in his Memorandum Opinion of April 20, 2016:

> The relationship between SCH and CPI is close: SCH "lease[s] the same office space" that is used by CPI; SCH and CPI share a telephone number; and, SCH's employees are former employees of CPI.   SCH does not perform "any activity that wasn't [previously] performed by Creative Pipe."   In essence, CPI restructured its business so that SCH would take over "everything that goes along with the sale of a product from beginning to end."   Unlike CPI, Jeanette Pappas is the sole shareholder of SCH. Nonetheless, Mr. Pappas works as a consultant to SCH and has full access to SCH's business data.

Md. Docket No. 721, Exhibit D, at pp. 12–13 (citations omitted).[5]


## IV.      The Other Conveyances from Mark Pappas to His Wife Without Consideration

The case history includes the incarceration of Mark Pappas in 2011 for contempt of court after he fled to Belize with personal and corporate assets (including CPI's pension plan funds).[6] Mark Pappas was released from incarceration with conditions, but, as the Court found, Mark Pappas "did not comply with the conditions" and this lead to another sanction award of attorney's fees "by virtue of [his] actions to avoid payment to VSI of the [2011] sanctions award."   Exhibit E at 4.   Mark Pappas was later forced to repatriate those personal and pension funds back to the United States to pay for the court's sanction award against Mark Pappas and

---

[5] These findings of the Magistrate Judge relating to SCH were never timely appealed or challenged by Mark Pappas. *Id.,* Md. Docket No. 747, Exhibit E, at p. 6.

[6] This history is set out in the Memorandum and Order Re: Sanctions/Contempt, at pp. 3–4.   Md. Docket No. 747, Exhibit E.

CPI.[7]   As to the real estate purchased in Belize with some of those funds, Mark Pappas initially claimed that the real estate was owned by the CPI Pension/Profit Sharing Plans. After the District Court rejected that assertion, Mark Pappas switched his claim and argued that the Belize properties are co-owned by him and his wife through a foreign entity created in Belize called "Next Chapter Development Limited".   However, there is no evidence that Mrs. Pappas provided purchase money for the Belize properties.   Mark Pappas was ordered to assign to VSI his ownership interests in the Belize properties.   However, he continues to claim that 50% of rights to those properties belong to his wife. [8]

On July 10, 2013, Mark Pappas served interrogatory answers in which he acknowledged that he owned $100,000 shares of stock in Ridge Diagnostics, LLC, which he purchased for $125,000.[9]   Mark Pappas later admitted that he transferred his stock in Ridge Diagnostics to his wife after the Judgment was entered against him.   He further admitted that the transfer was made without receiving any monetary payment in return from his wife.[10]

Mark Pappas, who has a degree in Economics from Stanford and a MBA from the University of Michigan, established and then ran CPI for over 20 years as its sole officer. Operations of CPI included occasional powder-coating of the site furnishings sold by CPI.   To that end CPI purchased powder-coating equipment.   As the District Court proceeding was closing in on Mark Pappas and CPI with threats of large sanctions and a large judgment

---

[7] Order Re: Belize Funds, Md. Docket No. 646, at pp. 2–7.

[8] Exhibit I, at p. 4 (pleading filed in contempt proceeding by Mark Pappas re-affirming claim that Mrs. Pappas is co-owner of the properties in Belize that the District Court ordered assigned to VSI).

[9] Exhibit I, at p. 6.

[10] Exhibit J, Testimony of Mark Pappas, January 17, 2017, at Tr. 52-53.

imminent, Mark Pappas carved out a portion of the powder-coating business and created a separate entity called "Torcoat, LLC" so that this entity would now charge CPI for the powder-coating work that CPI was doing in-house in a building owned by Mark Pappas in Salem, Oregon.  Pappas then made his wife the sole owner of Torcoat, LLC ("Torcoat").  Mrs. Pappas, who lives in Houston, had no experience or background in powder-coating.  The evidence is that she has only once been to the powder-coating operations in Oregon.  Thus, Torcoat was nothing more than a paper shuffle within CPI which allowed CPI funds and income to be diverted to Mark Pappas' wife.

### V.        The History of Evasion and Bad Faith Responses to Discovery Requests

Mark Pappas and his related entities have a long history of giving false and incomplete responses to discovery requests in the underlying litigation.  This history includes not just multiple instances of document destruction, but also numerous instances of providing false, misleading or incomplete responses to discovery requests in which they deliberately omitted adverse information in their self-selection of what documents they deemed "relevant" to the case:

1. In its self-serving production in response to the SCH subpoena served, SCH produced a *list* of checks which it claims reflected SCH payments made on behalf of Mark Pappas.[11] However, omitted from that self-serving production were at least 36 checks (totaling over $235,000) in which SCH paid Mark Pappas' obligations to Anchor Bank on a loan which Pappas took out to pay for real estate in Salem, Oregon.[12]   SCH's and  Mark Pappas'

---

[11] Exhibit K.

[12] Exhibit L. Compare this with the claim in SCH Objections and Response to Specification 6 ("… SCH anticipates producing materials on October 30, 2017 reflecting all payments in the

motivation in leaving out these check is clear—they want to minimize discovery of   the instances and the amount of money that SCH is channeling to Mark Pappas either directly or indirectly by paying his obligations.[13] The fact that SCH has made such large payments on Mark Pappas' obligations underscores both that Mark Pappas is in *de facto* control of SCH and that he is receiving substantial back-door income from SCH which should be going to purge himself of his contempt of court.

2.   The Magistrate Judge in the post-judgment proceeding in Maryland previously found that Mark Pappas was giving misleading responses regarding the actual nexus and relationship between SCH and Mark Pappas. Indeed, Pappas' sophistry and obfuscation in those discovery responses <u>about SCH</u> is one of the bases to the Court's findings and recommendations that Mark Pappas and CPI be held in contempt of court.   Memorandum Opinion, Md. Docket No. 721, Exhibit D, at pp. 12–14.

3.   It has been repeatedly established that Mark Pappas' characterization of what the documents show do not match what the documents actually reveal.   For example, Pappas' pretrial characterization of the underlying CPI accounting records proved to be quite misleading. For instance, Pappas testified that he "rarely, if ever, use(d) a corporate card for my personal expense."   Hearing of November 18, 2010, at Tr. 70(4) – (7). Exhibit N.   VSI then successfully compelled production of the underlying credit card records.   Upon review of the actual

---

requested time frame between SCH and Mark Pappas, and SCH and Trickorbang consulting which will satisfy the legitimate needs of this request.") (emphasis supplied). Exhibit M.

[13] The self-selecting of these checks which omitted key responsive checks was undoubtedly done by Mark Pappas himself.  We imply no wrong-doing whatsoever by counsel for SCH and Mrs. Pappas.  This is not the first time that one of Mark Pappas' counsel has unwittingly submitted a misleading or incomplete discovery response. *See, e.g., Victor Stanley, Inc.,* 269 F.R.D. at 503 n. 13.

underlying records it was established that Mark Pappas used the CPI credit card to pay personal expenses running into the *millions* of dollars, "expenses" that were deducted on the CPI returns as ordinary business expenses.  J. Barsky, 1/20/11, Exhibit H, at Tr. 202(17)–203(3), 203(20)–204(10), 206(17)–208(9).[14] The CPI credit card was used to pay for Pappas' luxury cars, his children's private tuition, multiple homes, international resort vacations, expensive jewelry, and his wife's personal expenses. *See* J. Barsky, 1/20/11, Exhibit H, at Tr. 202(17)–203(3), 203(20)–204(10), 206(17)–208(9).  More importantly, it was discovered that Mark Pappas has systematically falsified the CPI books as to these expenses by routinely listing various personal payments as a business expense.  For  example (among many), CPI paid Mark Pappas' children's private school tuition using a CPI credit card and those payments were listed by Mark Pappas on the CPI books as "other professional fees".  *Id.*  Mark Pappas took luxurious vacations to Mexico paid on the CPI credit card but placed on the CPI books as "rent."  *Id.; see also* Rebuttal Report of Jeffrey Barsky, Exhibit P, at pp. 5-7. These critical facts were exposed only after the Court ordered discovery of the <u>underlying</u> documents. The truth at trial would never have been revealed had VSI been forced to rely on Mark Pappas' self-serving summaries of the business records.

4. In the underlying litigation, Mark Pappas was caught removing sales invoices from the CPI records it produced, apparently to understate the revenues CPI derived from sales of the VSI products it infringed. This caused the trial judge to upwardly adjust the damage award to reflect the missing invoices. Memorandum of Decision, September 30, 2011, Md. Docket No. 480, at p. 12 n. 13.

---

[14] The cited trial testimony of Mr. Barsky is found in Exhibit O.

5. In his divorce proceeding in California from his first wife, Mark Pappas was caught changing business sales orders, forcing the Court to enter a restraining order against him, prohibiting him from making any further data alterations. *See Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 502 n.10 (D.Md.2010).   The scheme involved Mark Pappas creating a new company called "Scapeworks, LLC" in the midst of the divorce litigation in order to evade payments to his wife in the divorce case.  Pappas created this new company and then changed the invoices for payment to CPI (a company in which his wife had an interest) to invoices for payment to Scapeworks, LLC in which his then-wife had no interest. Affidavit of Chad Hendry, Exhibit Q, at ¶1.

6. Mark Pappas and his related entities have a dismal record in the underlying litigation as to their self-serving selection as to what should be produced.   *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 508, 531 (D.Md.2010) (not only did Mark Pappas and CPI intentionally destroy highly relevant evidence in the discovery process, Mark Pappas repeatedly lied about it to the Court).

7. Mark Pappas and CPI did not learn their lessons from the severe sanctions imposed in 2010 in the underlying case.   Defendants' post-judgment discovery responses have been described by Judge Garbis as repeatedly non-compliant "with the purpose of evading [VSI's] attempts to gather information."   Memorandum and Order Re: Sanctions/Contempt, at 10, Exhibit E.

## ARGUMENT

I.    **This Court Should Overrule Each of Mrs. Pappas' Objections and Order Her to Fully Comply with the Subpoena**

VSI has subpoenaed various records of  Mrs. Jeanette Pappas and SCH because they are directly relevant to the issues pending before the District Court in Maryland which include (a)

what assets Mark Pappas has transferred to his wife in order to evade collection from him on the Judgment, (b) what assets Mark Pappas actually controls, (c) the extent to which SCH is actually the successor to Defendant CPI, (d) what income controlled by Mark Pappas is being sheltered through such entities as Torcoat and SCH, and (e) what are the assets, payments or other benefits Pappas has received and continues to receive from SCH and Torcoat.  As set forth below, each of the relevancy and burdensome objections asserted by Mrs. Pappas to Specification Nos. 1, 3–5, 7–12, and 14 of the Subpoena should be overruled.[15]

Liberal discovery is afforded to judgment creditors under Federal Rule of Civil Procedure 69(a)(2).  *ClearOne Commc'ns, Inc. v. Chiang*, 276 F.R.D. 402, 404 (D.Mass.2011).  The judgment creditor has "wide latitude" in conducting post-judgment discovery. *Libaire v. Kaplan*, 760 F.Supp.2d 288, 293 (E.D.N.Y.2011).   "The judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *Caisson Corp. v. County W. Bldg. Corp.*, 62 F.R.D. 331, 334 (E.D.Pa.1974).  This includes examination of and discovery from third parties that have a close relationship with the judgment debtor. *Id.* at 335.   Here, the judgment creditor has satisfied the requirement of presenting some evidence suggesting that the third party is an alter ego or "mere extension" of the judgment creditor. *See Falicia v. Advanced Tenant Servs., Inc.*, 235 F.R.D. 5, 7–8 (D.D.C. 2006).

A. *The SCH Records (Specification No. 8)*

Specification No. 8 requested that Mrs. Pappas produce:

The complete accounting and financial records for SCH Enterprises, LLC from January 1, 2015 to the date of your response. This shall include your electronically created and

---

[15] As to the other Specifications in the Subpoena, Mrs. Pappas either produced the requested documents or claimed she had no responsive documents. VSI reserves all rights to later move to compel on those Specifications should it later appear that there are responsive documents that have not been produced.

stored accounting records, including your QuickBooks or other similar accounting software records, with metadata intact and in a readable format.

Mrs. Pappas responded/objected as follows:

Jeanette Pappas objects that this request is vague, ambiguous, overly broad, unduly burdensome, and not properly tailored. Jeanette Pappas further objects because this request seeks the disclosure of confidential business information, including the identity of SCH's customers, contractors, vendors, clients, and other information which provide SCH with a competitive advantage. This request seeks all accounting and financial records of SCH, which is a nonparty to this litigation. The request, therefore, constitutes an impermissible "fishing expedition." Moreover, this request seeks information irrelevant to this action to the extent it seeks evidence of any transactions unrelated to Mark Pappas or any entity owned or controlled by Mark Pappas or Creative Pipe, Inc. Additionally, the request is not proportional to the needs of the case because information concerning business transactions unrelated to Mark Pappas, Mark Pappas' owned or controlled entities, or Creative Pipe, Inc. have nothing to do with this case and are not important to the present action. This request is also improperly addressed to Jeanette Pappas as opposed to SCH Enterprises, LLC.

All these objections should be overruled. First, the very same records and QuickBooks data for CPI have been ordered produced in the underlying case. Letter Order, October 20, 2010, Md. Docket No. 393. CPI produced such records as recently as December 15, 2014. It has never been a burden in the past for CPI to make an electronic copy of its QuickBooks files. In fact, making an electronic copy of this standard and widely used accounting program is now relatively user-friendly. Mrs. Pappas—who ostensibly "owns" SCH—can ask SCH's staff or its accountants to make that copy.

Second, these records have been essential in the past in allowing VSI and the Court to get an accurate picture of the Defendants' operations and activities. Indeed, on the issue as to whether SCH is a mere continuation or successor to CPI, the detailed financial records contained in QuickBooks are the best evidence available. Production will allow VSI (and the Court) to assess, *inter alia*, (a) the similarity between the CPI and SCH operations, (b) the similarity in vendors, (c) the similarity in customers, (d) any transfer of funds or assets from CPI to SCH, and

(e) the payment of Defendants' obligations by SCH. The QuickBooks data, along with the checking records, will also provide direct evidence of how much money SCH has transferred or paid to Mark Pappas or to others for his behalf, and thus show what type of funds or assets Mark Pappas should have available to pay the Sanctions Award.

Third, given the long history of false and incomplete responses to discovery requests in the underlying litigation, the Court should reject Mrs. Pappas' offer to self-servingly select for production the portions of the SCH records she deems relevant to the pending contempt matter. That is a license for obfuscation.

Finally, to the extent that Mrs. Pappas believes that a response would include sensitive or confidential business information, her production of any such information can be made pursuant to the existing Protective Order in the case, a protective order which CPI and Mark Pappas found satisfactory throughout the case to protect their confidential and propriety data. Md. Docket No. 66.

### B. Ridge Diagnostics (Specification No. 14)

Specification No. 14 required Mrs. Pappas to produce:

> All instruments, documents or records evidencing the sale, transfer or other documents relating to the stock for Ridge Diagnostics. This shall include any request for change in the registration of ownership of such stock.

Mrs. Pappas responded/objected as follows:

> Jeanette Pappas objects that this request seeks information that is irrelevant to this action and is overbroad, unduly burdensome, and not proportional to the needs of the case because the proposed discovery is not important in resolving the issues in this action. Jeanette Pappas further objects because this request seeks the disclosure of confidential business information of Ridge Diagnostics, who is a nonparty to this litigation. The request, therefore, constitutes an impermissible "fishing expedition." Moreover, this request seeks information irrelevant to this action to the extent it seeks evidence of any transactions unrelated to Mark Pappas or any entity owned or controlled by Mark Pappas or Creative Pipe, Inc. Additionally, the request is not proportional to the needs of the case because information concerning business transactions unrelated to Mark Pappas, Mark Pappas' owned or controlled entities, or

Creative Pipe, Inc. have nothing to do with this case and are not important to the present action.

Each of these objections should be overruled and Mrs. Pappas should be ordered to produce the requested documents.   Mrs. Pappas' position ignores that the scope of the pending contempt proceeding includes consideration of the transfers that Mark Pappas has made to his wife. October 2, 2017 Procedural Order, Md. Docket No. 758, at p. 2. The post-judgment transfer of the Ridge Diagnostics stock by Mark Pappas to his wife without consideration is expressly within the scope of that proceeding. Mrs. Pappas, as the apparent recipient of a fraudulent transfer, should be compelled to produce the documents she has relating to that stock and its transfer.   There is no evidence that production of such documents would impose an undue burden on her.

## C.  The Torcoat Documents (Specification Nos. 3, 7, and 9-11)

The Subpoena in five separate specifications requested that Mrs. Pappas produce the business and financial records, credit card, accounts receivables, and tax records for Torcoat since January 1, 2015. As to each such request, Mrs. Pappas had essentially the same objection/response:

> Jeanette Pappas objects that this request is vague, ambiguous, overly broad, unduly burdensome, and not properly tailored. This request seeks all accounts receivable of Torcoat LLC, a nonparty to this litigation and is a clear "fishing expedition." Jeanette Pappas further objects because this request seeks the disclosure of confidential business information, including the identity of Torcoat LLC's customers, clients, and other information which provide Torcoat LLC with a competitive advantage. Moreover, this request seeks information irrelevant to this action to the extent it seeks evidence of any transactions unrelated to Mark Pappas or any entity owned or controlled by Mark Pappas or Creative Pipe, Inc. Moreover, the request is not proportional to the needs of the case because information concerning business transactions unrelated to Mark Pappas, any of Mark Pappas' owned or controlled entities, or Creative Pipe, Inc. have nothing to do with this case and are not important to the present action. This request is also improperly addressed to Jeanette Pappas as opposed to Torcoat LLC.

Each of these objections should be overruled and Mrs. Pappas should be ordered to produce the requested documents.  First, the assertion that the transfers to Mrs. Pappas "have nothing to do" with the pending contempt proceeding is manifestly wrong. As set forth above, the Court will be considering such prior transfers of assets from Mark Pappas to his wife <u>and</u> whether Mark Pappas is using his related entities to shelter funds that could be used to make payments towards the Sanctions Award. It appears that Mark Pappas is using Torcoat as a device to shift revenue away from CPI and diverting it to his family.   The Torcoat income stream is money that supports his rather luxurious life-style and undermines his claim before the District Court in Maryland that he is currently too impoverished to pay even a dime towards the Sanctions Award.

Second, this is hardly a "fishing expedition." Mark Pappas has a history of setting up new companies to avoid impeding legal obligations. He set up Scapeworks, LLC in the midst of his divorce proceeding in California and he more recently set up SCH in his wife's name post-judgment to avoid the Judgment entered against him and CPI.  Torcoat appears just to be another example of this tactic by Mark Pappas.

Third, Mrs. Pappas asserts that the information should have been sought directly from Torcoat. That objection is irrelevant.  As the "owner" of Torcoat, she is under an obligation to produce the Torcoat under <u>her</u> "possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii).  Tellingly, Mrs. Pappas does not claim she does not have "possession, custody, or control" of the Torcoat documents.

Fourth, Mrs. Pappas claims, without evidence, that the requests are improper because it will cause disclosure of "Torcoat LLC customers." This assertion is disingenuous since Torcoat has no "customers" other than CPI (and now its successor SCH). To the extent that

Torcoat has any real "confidential business information," production of any such information can be made pursuant to the existing Protective Order in the case.  Md. Docket No. 66.

The requested Torcoat records are directly relevant to the pending contempt proceeding in the District Court of Maryland and production of the requested materials would not impose an undue burden on Mrs. Pappas, particularly when weighed against the need for the Court to get the full picture of what assets and income might be available to Mark Pappas to address his obligations to pay the Sanctions Award.   Mark  Pappas' transfers of the income stream of CPI to this wife by the creation of Torcoat  appears to be the very type of self-impoverishment which the courts consider in fashioning purge orders for parties in contempt who claim they cannot pay a court-ordered fine or sanction because all their assets are now gone. *See  S.E.C. v. Bilzerian*, 112 F.Supp.2d 12, 26-28 (D.D.C. 2000) (a district court, as part of contempt powers, may order coercive  incarceration of a party who purposefully disposes of assets to family members in order to create the impression that he has the inability to pay court-ordered monetary sanction against him).

### D.  Mrs. Pappas' Recent Banking Records (Specification Nos. 4 and 5)

Specification No. 5 requested that Mrs. Pappas produce:

> All checking records for any  personal or business accounts on which your name appeared or in which you owned any interest, legal or equitable, since January 1, 2015, including all registers, cancelled checks, wire transfer memoranda, check stubs, periodic statements, computer records or balance sheets or any other documents which pertain to such account.  All cancelled checks shall be copied on both sides.

Specification No. 4 requested that Mrs. Pappas produce:

> All passbooks, periodic statements, and other documentary evidence of any account opened by you for your benefit or by you for the benefit of another, whether said accounts are now open or closed, from January 1, 2015, through the date of your response.

Mrs. Pappas responded/objected to both as follows:

> Jeanette Pappas objects that this request seeks information that is irrelevant to this action and is vague, ambiguous, overbroad, unduly burdensome, and not proportional to the needs of the case because the proposed discovery is not important in resolving the issues in this action. Jeanette Pappas further objects because this request seeks the disclosure of confidential business information of nonparties to this litigation. The request, therefore, constitutes an impermissible "fishing expedition." Moreover, this request seeks information irrelevant to this action to the extent it seeks evidence of any transactions unrelated to Mark Pappas or any entity owned or controlled   by Mark Pappas or Creative Pipe, Inc. Additionally, the request is not proportional to the needs of the case because information concerning business transactions unrelated to Mark Pappas, Mark Pappas' owned or controlled entities, or Creative Pipe, Inc. have nothing to do with this case and are not important to the present action.

Each of these objections should be overruled and Mrs. Pappas should be ordered to produce the requested documents.  First, the assertion that the transfers from Mark Pappas to Mrs. Pappas "have nothing to do" with the pending contempt proceeding is wrong. Specification No. 5 seeks Mrs. Pappas' personal banking records, limited to the past two years.  The request is narrowly crafted to  (a) discover what funds of Mark Pappas may have been run through her accounts, (b) what funds of CPI, Torcoat or SCH may have been run through her account, and (c) what obligations of Mark Pappas are being paid by Mrs. Pappas. For example, deposits into her account may show that large sums of SCH or CPI funds are being diverted or sheltered there. Also, to the extent that Mark Pappas' debts and obligations are being paid out of any account in the name of Mrs. Pappas, including money that supports his rather luxurious life-style, that information would undermine his claim before the District Court in Maryland that he is currently too impoverished to pay even a dime towards the Sanctions Award.

Second, this is hardly a "fishing expedition," and it is limited to a two-year period. In a fraudulent transfer situation, family members are often the recipients of the fraudulently transferred funds or their names are used as shelters.   Given that Mark Pappas has a history

of  fraudulent transfers and has used new accounts to shelter his income, a look at the recent bank account information of his wife is reasonably calculated to lead to the discovery of evidence germane to the pending contempt proceeding.

Third, Mrs. Pappas has been personally benefitting from Mark Pappas' transfers of assets and funds to her.   As the gratuitous beneficiary of these transfers, it is not unreasonable to expect her to provide detailed historical information about the substantial amount of income she has received as a result.   Under the circumstances, this imposes no undue burden on her.

Fourth, to the extent that Mrs. Pappas wants to protect any of her personal financial information from disclosure outside the context of this litigation, any such personal information can be produced pursuant to the existing Protective Order in the case.   Md. Docket No. 66.

As to Specification No. 4, that relates only to recently opened accounts "by you for the benefit of another."   Tellingly, Mrs. Pappas did not respond that there were no such recently opened accounts (as she did in response to other Specifications when there were no responsive documents).   The implication is that there are such accounts.   For the reasons set forth above, the requested information relating to such recently opened accounts should be produced.

### E.  Any Recently Created Trusts (Specification 12)

Specification 12 asked Mrs. Pappas to produce:

> Copies of any <u>trust agreements</u> or declarations of trust which presently exist and/or which have existed at any time <u>from January 1, 2015</u> through the present of which <u>you or Mark Pappas are or were a beneficiary, trustee, or party to said instrument</u>.

Mrs. Pappas responded/objected as follows:

> Jeanette Pappas objects that this request seeks information that is irrelevant to this action and is overbroad, unduly burdensome, and not proportional to the needs of the case because the proposed discovery is not important in resolving the issues in this action. Further, this request seeks to invade the privacy rights and confidential information of Jeanette Pappas, who is a nonparty to this litigation. The request, therefore, constitutes an impermissible "fishing expedition." Moreover, this request is more properly addressed to Mark Pappas, who is a party to this litigation.

Each of these objections should be overruled and Mrs. Pappas should be ordered to produce the documents relating to any such relatively-recently created trust agreement. First, the Specification, as narrowly framed, relates to discovery of any relatively recent trust arrangement in which either Mrs. Pappas or Mark Pappas is a beneficiary or party. This relates to the creation of arrangements or trusts that have been recently created to hide or shelter assets of Mark Pappas which (a) otherwise could be used to pay the Sanctions Award or (b) establish that Mr. Pappas is not as impoverished as he claims.

Second, this is hardly a "fishing expedition" since Pappas has a history of creating various means to hide his income and assets. It is reasonable to explore whether he has recently created a new trust arrangement.

Third, it is no objection that the request "could" be directed to Mark Pappas. Mark Pappas has a history of not being truthful when asked to produce such information in discovery and that, in part, has forced VSI to go to others to obtain information. To the extent that Mrs. Pappas herself has responsive documents in <u>her</u> "possession, custody or control," she must produce them. Fed. R. Civ. P. 45(a)(1)(A)(iii).

### F.  Mrs. Pappas' Tax Returns (Specification No.1)

Specification No.1 asked Mrs. Pappas to produce:

> Your federal and state income tax returns, including schedules and attachments, and all supporting schedules, any requests for extension, and any communications regarding

your tax returns to or from the Internal Revenue Service or state tax departments since January 1, 2015, through the date of your Response.

Mrs. Pappas responded/objected as follows:

Jeanette Pappas objects that this request seeks information that is irrelevant to this action and is overbroad, unduly burdensome, and not proportional to the needs of the case because the proposed discovery is not important in resolving the issues in this action. Further, this request seeks to invade the privacy rights and confidential information of Jeanette Pappas, who is a nonparty to this litigation. The request, therefore, constitutes an impermissible "fishing expedition." As limited by the asserted objections, Jeanette Pappas anticipates that she will begin producing materials responsive to this request regarding SCH Enterprises LLC ("*SCH*") on October 30, 2017.

Each of these objections should be overruled and Mrs. Pappas should be ordered to produce the responsive tax returns. First, VSI has already received Mrs. Pappas 2016 return because she filed jointly with her husband that year and her husband produced that joint return earlier this year. Her legitimate privacy concerns as to her other returns can be addressed by production pursuant to the existing Protective Order.  Md. Docket No. 66.

Second, the request for the personal returns filed by Mrs. Pappas since January 1, 2015[16] is reasonably calculated to lead to information pertinent to the subject matter of the contempt proceeding. It is designed to show how much income and from where Mrs. Pappas has received during this period.  For instance, it is believed that the returns will show that she made hundreds of thousands of dollars from SCH and Torcoat, money that was diverted from CPI in the scheme set up by Mark Pappas to take the revenues that would normally be attributable to and owed to CPI and put them in the hands of his wife.  It is designed to show what assets Mrs. Pappas owns and then to discover if there are other undisclosed assets of Mark Pappas that have been transferred to her.   It is designed to learn if she claims any interest in any offshore account.  It is designed to show if she has claimed any interest in the

---

[16] This would include Mrs. Pappas' personal returns for tax years 2014 and 2015 only since her joint return for 2016 has already been produced by her husband.

properties in Belize. The absence of any such claim in her personal returns would rebut Mark Pappas' claim in the District Court proceeding that the Belize properties are jointly owned with his wife.

Third, the request for Mrs. Pappas' personal returns is narrowly limited to the returns filed since January 1, 2015, in order to reduce the burden on Mrs. Pappas and limit the intrusion into her affairs.  But this Court should give limited weight to Mrs. Pappas' concerns in that regard. As the beneficiary of what appears to be multiple fraudulent transfers to her by her husband, Mrs. Pappas could reasonably have expected that this largess would come with an obligation to establish that she received this largess in a fully lawful and non-fraudulent manner and that she is not being used by her husband to defraud his creditors and to defraud the District Court with his claims of poverty.

## **CONCLUSION**

For the reasons set forth above, VSI respectfully requests that the Court overrule all of Mrs. Pappas' objections to the Subpoena and then order Mrs. Pappas to produce each and all of the documents responsive to Specification Nos. 1, 3–5, 7–12, and 14 of the Subpoena.

To the extent she deems it necessary, Mrs. Pappas should be permitted to produce any confidential business information in accordance with the existing Protective Order in the proceeding in the District of Maryland.

A proposed Order is attached.

Dated: November 22, 2017

Respectfully submitted,

By:  _/s/ Blake Jenkins_

Randell C. Ogg, Esquire
Law Offices of Randell C. Ogg
1750 K Street, N.W.
Suite 900
Washington, DC  20006
(202) 808-3150 (t)
(202) 355-6495 (f)
rogg@ogg-law.com
_Pro-hac vice application_
_forthcoming_


Blake A. Jenkins
Texas SBN 24097885
Southern District No. 2887814
Hogan Lovells US LLP
609 Main Street, Suite 4200
Houston, TX 77002
Phone: (713) 632-1400
Blake.jenkins@hoganlovells.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November, 2017, I caused to be served a true and accurate copy of the foregoing via e-mail (by agreement) on the following:

Scott P. Armstrong
Joshua D. Lee
ARMSTRONG LEE SAVAGE LLP
2900 North Loop West, Ste. 830
Houston, Texas 77092
armstrong@armstrongleesavage.com
lee@armstrongleesavage.com

By:  */s/ Blake Jenkins*
Blake A. Jenkins

## CERTIFICATE OF CONFERENCE

I hereby certify that on November 1, 2017, counsel for Plaintiff, Randell C. Ogg, conferred with counsel for Jeanette Pappas regarding Jeanette Pappas' responses and objections to the Subpoena served on her by Plaintiff. The parties were unable to resolve their differences as to Specifications Nos. 1, 3–5, 7–12, and 14.

By:  */s/ Blake Jenkins*
Blake A. Jenkins